U.S. DISTRICT COURT OF MASSACHUSETTS

```
                                    FFICE

                              2004     23  P 4: 02
```

Pavelcsyk.                      )
                                )
Plaintiff                       )
                                )          #03-30312-MAP
    vs.                         )
                                )
                                )
Williamsburg Board of Health    )
                                )


Civil action # 03-30312-MA
                         P          (03-30312-MAP)


ANSWER TO MOTION TO DISMISS AND SUPPORTIVE INFORMATION


Note: I just noticed some pages & attachments missing,-- these will be forthcoming no later than Wed. 8/25/04 PJP

SPECIFIC ANSWERS TO DEPENDANT"S MOTION TO DISMISS

1. Exhibit "B" is a copy of the first page of the original complaint showing the U. S. Court's date stamp further refutes the argument re dates.  perhaps the defendant never got a copy of this particular page with the date stamp. Note also that the original complaint contains a clarification about 10/19/03 being a Sunday.The Williamsburg Board of Health did commit process and legal infractions in their attempt to destroy my home and misrepresent me to the public. The use of the words "societal menance in the original court document HSCV #2000-00240 was not only inappropriate but also refuted by the many town citizens who offered support of my attempts to get a permit for a replacement mobilehome.  Further expansion of the wrongful destructions of my home and character are provided in a different portion of this pleading.

2. Because the Oct. date came up before I could find an attorney, I entered the issues narratively in the original complaint, and subsequent documentation to this claim have more specifically identified the issues.  This is not a relitigation of the same case, although portions of said case have surfaced in both parties' answers/motions, etc. Therefore defendant's claims in #1 and #2 of themotion to dismiss remain invalid.

3. The issue of "qualified immunity" seems a moot point , given the fact that the Williamsburg Board of Health had

actually contributed to the sanitation issues they thought justified civil rights infractions. These contributions have previously been presented . Several meetings had been held with Selectmen , who eventually seemed to comprehend my pleadings in court and in town meetings regarding a problem with oppressiveness exhibited by BOH and especially by their agent, that not only wrongfully ruined my home but also my life. I had been understandying in my deliberations with BOH because I sensed they really weren't in psychological control of their behavior. Referring to £2 of section 3 of the defendant's motion to dismiss (lines 6 & 7)--"qualified immunity provides protection to all but the plainly imcompetent or those who knowingly violate the law"---BOH members had been made well aware of my concerns with their anti-democatic behavior via my direct commmunication with them--because of their unreasonableness, I appealed to Selectmen-in one documented meeting, I was told to leave when trying to clarify the confusion regarding building codes--Donna Gibson had aksed me what I was doing at a BOH meeting when my home was to be discussed-her conduct re not recognizing my rights as homeowner , curtailing meetings, and callling WPD on me for attempting to communicate, were clear violations of the Constitutional right of freedom of speech,--it seems incomprehensible that a demo memo was issued within 2 weeks of her knowledge that I had contacted REP. Kulik regarding demo issues and her inability to conduct meetings

that blocked clarications of codes This would clearly establish an abuse of power claim. One attorney had stated BOH was trying to make a criminal issue out of a civil matter via the use of WPD to harass and intimidate me. The Constiitution of the United States allows a citizens the full enjoyment of his/her property (see attached)--barring me from my land, wrongfully tearing apart my home, and other deprivations do not comply with this basic right.Two attachments, 1) copy of the law BOH misapplied ia attached--the word "safety" was picked up by BOH out of thie inability to discern a neighbor's complaint when I had to extract some inhouse materials and put them in the yard temporarily for some interior decorating---if this "full enjoyment" right is not upheld, it will become immpossible to pursue life , liberty, and happiness in the town of Williamsburg!!!! 2) Copy of letter to an asst. District Atty. that should put "edicts" or portions thereof by which the defendant has tried to color their wrongs, in a different perspective--an investigation pending would have bearing on this case.. The last portion of the Defendant's "Motion to Dismiss" not only is inconsistent with the re-litigation issue raised in the first portion of the motion but also overlooks some facts:  I was never tried for contempt, as there was a rebuttal by me in the record for for each claim--generally court meetings were centered around Schmidt's inability to recognize appeals of "orders" (ref.Pepyne letter) re inspections, date setting, and to

secure WPD officers behind the Police Chief's back,
An attachement of an appeal page is enclosed for an example--not being an atty., I could not access the record, and have to depend on what was retrieved from the demo by a concerned family member--destroyed were actual dated photos of my running water, but these weres==submitted to the Hampshire Superio;r Court by the deadline Rup set- a copy of a repair of my pressure switch, damaged by an 8-mo. power shutoff by BOH, is enclosed in lieu of the photos.

Page 8 of the Defendant's Motion to Dismiss contains references to employment cases that are not relevant to the relationship between a town government and its citizens.

Due process concerns I have raised are largely centered around the difficulty securing attorneys in condemnation issues, the obvious parameter of poverty being a block to an attorney who wants his bill paid. More
specifically, being hearing diaabled, having to appear
pro se in the Superiort Court proceedings that demonstrated an overreaction by BOH, meant that I could not effectively respond to things said in Court. Ha ving to run to hearings while working 2 jobs, with time t get an atty,, meaning the other side has an obvious advantage, can obstruct justice. The state statute that protects the physically disabled from harassment applies to BOH members

STATEMENT OF LOSSES VIA WRONGFUL DEMOLITION

5/28/02

Aside from the loss of the home itself, valued at about $4,000, there were items in the home which were not retrieved due to my wrongful arrest --I believe WPD thought they needed to carry me off my property because an "order" possibly not signed by a judge , that preceded any actual demo order and was being appealed by me, stated I should be carried off my property. Not only were such orders un-Constitutional but, via consultation with a WMLS attorney, violated CMR regulations in that inspections or condemnations were not to be done in the owner's absence.

The demolition necessitated room rentals for the past 2 years, totalling about $6800, and several receipts are attached.

Among items destroyed were irreplacable letters of reference. The loss here could approach $35,000 to $40,000 via blocking acuisition of professional positions, since I have an M.Ed. in special education

Valuable electronic items lost, include: 1) a 1989 Quasar videocamera, orig.$1200, a 1980 Emerson color TV, orig.#300, a 1982 Fisher stereo system , orig.$300. a a 1987 1987 Emerson VCR, orig. $250, a NEW Sony cassette

recorder,$50.00. There were several other electronic items, a remote phone, a tape recorder, a microcassette recorder, a small phonograph, several radios--lump sum value @ $100.00

Some musical instruments were retrieved by the demo team--but I did lose two 12-string guitars, one was $200 in a 1984 purchase, another was

$375 in a 1985 purchase--I also had a Stradivarus violin which would cost
$500.00 to replace. and an antique 13-note accordion, a family hierloom, hand-carried by my grandfather from Europe, and rare in that this size accordion usually has 15 keys. I would guess its value as an antique at $200-$700.00????
There were also 2 sewing machines lost-one a standard Singer $150 in 1978, and another a 1990 dressmaker, more

sophisticated and valued at $250.

Losses via defamation of character which made my life very difficult before and after the wrongful demolition, could be be anywhere in the range of $30,000 to $50,000--one article, battached, wrongfully portrayed me as a dangerous personthose who knew me better were appalled at the lack of thinking on the part of Wmsbg. BOH.

Because Maxine Schmidt had freaked out over delayed housekeeping and a blown fuse, she had issued a "no trespass order" on the format by which an owner can cancel the order ( aphrase I showed WPD ), and I had been wrongfully arrested, I felt I had to sit in the woods with a gun to protect myself from the bears--I was trying to elicit to BOH the ridiculousness of their actions. Also, this article mislead its readers to believe I was some kind of unsafe person--a blowheater on newspapers were ready to be moved out of the house; yet the article and her statement implies that the heater was on on newspapers-it was late May,  Other articles confuse  my use of organic fertilizer outdoors as inhouse "fetidnees" While I was in hospital I was questioned and held longer because a demo worker saw one turd outside of my cat litter box and saio there was defecation all around. Said judge's order in defendant's motion to dismiss also is a confusion re my use of urine to effectively cultivate flowers--BOH's ignoring of the appeal process prevented this explanation.

Defamation of character through the media can have far-reaching and long-lasting effects--not even seeing articles subsequent to the demolition, until recently, made it even more difficult regarding community reactions to me--the stigma carried over into renting difficulties ( a landlady threatening to evict me until she saw the tidiness and cleanliness of my room, difficulty finding rooms, snubbing

by acquaintances, sneers from co-workers, and almost getting fired, but losing weekly work hours--for a year I worked at 16 hours less per week, a loss of over &8000, until one manager realized the foolishness of the images created by the articles and wrongful hospitilzation, and restored my full-time hours.

When ZBA meetings were held for a permit for a re-placement mobilehome, a reporter familiar with past articles, attended, and never publicized that many letters of support from neighbors and citizens,as well as those citizens attending in support of me and in disdain of BOH's actions.  The article is attached , and to state that I was sent for a psychiatric eval without clarifying that it was without a patholohgical finding, of course, created further damage to my reptutation. The permit was granted, but BOH had tried to block that, and there is a possibility that they are trying to influence a housing rehabilitation program that could fund aa replacement trailer, with a use of contingencies-- --I was getting a rather unique promissory note re payback conditions that very clearly paralled some contingencies BOH had used.  I had inside information that Maxine Schmidt had been contacting HCDC even before the demo,  A letter from the Selectmen re my concern , during ZBA mtgs in the spring of 2003, is attached.

themay-jpniy--p sy.
w--eel s e

I would include some of BOH's contingencies over the past three years as part of a malicious abuse of process claim--when the power was turned off in aforementioned paroxysm of paranoia, I called Mass. Electric who said that Ira Gabrielson had ordered that, and that he would let them know when it would be back on--this apparently
meant that BOH had intended to later restore the power- perhaps after my Rubbermaid containers, neatly stored and not containing trash, were removed. The paradox here has been previously mentioned--disable my electric water pump buy do my housekeeping dalayed by a temporary non-payyment of my electric bill-shortly after payment. I had been away and used a water shutoff to prevent a neighbor from using my outdoor faucet and not closing it properly, as had been done in the past, and could overwork the pump pressure switch. BOH repeatedly had trouble dis-scernig the difference between having running water and using a temporary shutoff. They inspected when I was away after WPD had broken in without a warrant--

(ed. note - There was one more page to sum up/conclude this "answer", but it must still be in my printer screen. It will follow no later than Wed. 8/25/04. My apologies for this oversight - (Had to get a bus to deliver this)

8/18/04

TO: CINDY PEPYNE
    NORTHWESTERN DISTRICT ATTORNEY'S OFFICE
FROM: PAULA PAVELCSYK

    A FEW MONTHS AGO I HAD CONTACTED THE DA'S OFFICE RE A SUSPICION I HAD REGARDING THE AUTHENTICITY OF SOME "COURT EDICTS" CONCERNING THE CONDEMNATION OF MY FORMER MOBILEHOME---THE PERSON WHO ANSWERED GAVE ME YOUR NAME AND REQUESTED A WRITTEN COMPLAINT TO INITIATE AN IN- VESTIGATION.

    BASICALLY, THE WILLIAMSBURG BOARD OF HEALTH WAS DETERMINED TO DEMOLISH MY HOME.  IT HAD GONE TO COURT (HAMPSHIRE SUPERIOR COURT, CIVIL ACTION #2000-00240) AND AFTER A THREE-YEAR BATTLE AND SOME INFORMATION THAT BOH'S HEALTH AGENT WAS A FRIEND OF A CLERK OF COURT'S

  ^D  Delete line    ^N  Insert line

---

att: U.S. District Court
_____

1) Request Not to Dismiss, pending this investigation, and given preceding info

2) Request for Reconsideration to appoint an attorney, pro bono, given my financial status + the complexity of this case.

Thanks!

Paula J Pavelcsyk

RELATIVE. I BEGAN TO SUSPECT THAT MY REBUTTALS AND PROOF
OF NO BUILDING CODE VIOLATIONS EITHER WERE NOT GETTING TO
THE JUDGE, OR IT WAS NOT THE JUDGE SIGNING EDICTS.

    OF PARTICULAR NOTE IS THE FACT THAT JUDGE RUP VISITED
IN LATE FEBRUARY, 2002. TOLD ME TO SUBMIT WRITTEN INFORMA-
TION BY MARCH 4, WHICH I DID, YET AN "ORDER" WAS ALLEGEDLY
SIGNED BY HER ON A DATE SHE WAS WORKING IN THE
SPRINGFIELD COURT SYSTEM. (SEE ATTACHED)--THE ORDER WAS
INCONSISTENT WITH THE INFORMATION I HAD SUBMITTED, WRONG-
FULLY STATED THAT THE WATER & ELECTRICITY HAD BEEN SHUT
OFF (SHE NEVER CHECKED) AND WHEN I WENT TO THE PUMPHOUSE
TO SHOW HER MY WATER SOURCE, MAXINE SCHMIDT, BOH HEALTH
AGENT, CAME RUNNING UP WITH 2 WPD OFFICERS TO QUESTION
WHETHER WATER RAN TO THE HOUSE---I HAD ANSWERED THAT QUESTION
MONTHS PRIOR, AS THE HOME HAD BEEN INITIALLY BROKEN INTO

  ^D  Delete line    ^N Insert line

NOTE PAD

AT A TIME WHEN I WAS AWAY AND HAD UTILIZED A HIDDEN
WATER SHUTOFF TO INHIBIT TAMPERING WITH MY OUTDOOR
FAUCET THAT COULD LEAD TO DAMAGE TO MY PRESSURE SWITCH
IF THE FAUCET WAS NOT PROPERLY CLOSED.

   SO, THE PROOF OF RUNNING WATER INSIDE AND OUTSIDE OF
THE FORMER MOBILEHOME HAD BEEN SUBMITTED TO RUP WITHIN
THE REQUESTED DEADLINE--THE ORDER HAD STATED REMOVAL OF
"DEBRIS" WHICH I BELIEVE REFERRED TO SOME PROPERLY STORED
ITEMS IN CONTAINERS OUTDOORS--ANY REAL "DEBRIS" HAD BEEN
REMOVED BY THE DEADLINE. (IF THE ORDER WAS TO BE CONSIDERED
VALID,) BUT SINCE THE JUDGE HAD NOT ENTERED THE HOME, THE
WORDING OF THE "EDICT" TOO CLOSELY RESEMBLED A REPORT
WRITTEN BY MAXINE SCHMIDT 3 YEARS PRIOR WHEN I HAD TO USE
A CHEMICAL TOILET IN THE KITCHEN DUE TO ILLNESS & INJURY.
   I HAD ENTERED AN APPEAL OF THE "EDICT", SINCE IT

^D  Delete line    ^N Insert line

```
CARRIED A THREAT OF DEMOLITION, HOWEVER, THE WILLIAMSBURG
BOARD OF HEALTH HAD IGNORED THE APPEAL PROCESS IN SPITE OF
MY INFORMING BOTH BOH AND THE SELECTMEN THREE DAYS PRIOR,
AND DEMOLISHED THE HOME.

     AS I HAD STATED ON THE PHONE WHEN I FIRST CALLED, I
WAS CONSIDERING FILING IN FEDERAL COURT FOR THIS APPARENT
BREACH OF DUE PROCESS, WHICH SEEMS TO VIOLATE THE U.S.
CONSTITUTION, FOR SUPPRESSION OF FREEDOM OF SPEECH BY BOH
IN MEETINGS IN WHICH I TRIED TO EXPLAIN THEIR CONFUSION
RE BUILDING CODES, AND FOR GENERAL BLOCKING OF CIVIL
LIBERTIES AND OPPRESSION IN THEIR DISTRESS OVER A SIMPLE
CONDITION OF DELAYED HOUSEKEEPING.  THEY WERE ALSO CON-
FUSED OVER A DRAIN PIPE LEAK AND THOUGHT THE WATER ON THE
FLOOR WAS FROM A LEAKY ROOF---THE SOLIDITY OF THE ROOF HAD
BEEN VERIFIED BY 2 CITIZENS TO THE BUILDING INSPECTOR./PJP

   ^D  Delete line    ^N Insert line
```

ISSUES REDUCED TO 1 sentence/phrase each:

1) Wrongful demolition, need to recover loss in $.

2) Harassment of a disabled person

3) Town government allowed a confused health agent to keep going along a wrongful and oppressive line of conduct

4) Infractions of malicious abuse of process and ignoring Constitutional rights

5) Invasion of privacy and defamation of character that deprived a citizen the rights of life, liberty, and happiness