Pavelesyk Winsh. Board of Health - 03 - MAP

secure WPD officers behind the Polic Chief's back,

An attachement of an appeal page is enclosed for an example--not being an atty., I could not access the record, and have to depend on what was retrieved from the demo by a a concerned family member--destroyed were actual dated photos of my running water, but these weres==submitted to the Hampshire Superio;r Court by the deadline Rup set- a copy of a repair of my pressure switch, damaged by an 8- mo. power shutoff by BOH, is enclosed in lieu of the photos. e sps--b=pen000sers behind the Poloce Chief's back ebehehind t-----c es r)j==eall==eb--itc lrel irREpsiblime 4. Page 8 of the Defendant's Motion to Dismiss contains references to employment cases that are not relevant to the relationship between a town government and its citizens.

Due process concerns I have raised are largely centeredd around the difficulty securing attorneys in condemnation issues, the obvious parameter of poverty being a block to an attorney wants his bill paid. More specifically, being hearing diaabled, having to appear pro se in the Superiort Court proceedings that demonstrated an overreaction by BOH, meant that I could not effectivey respond to things said in Court. Ha ving to t o run to hearings while working 2 jobs, wutgiyt time ti get an atty,, meaning the other side has an obvious advantage, can obstruct justice. The state statute that protects the physically disabled from harassment applies to BOH members

as well. Defendant offers no reasonable argument for "IMMUNITY"-- this is a right normally reserved for U.S.Congressmen--to make a long story short, it had been belabored verbally ad nauseum via Selectmen, BOH directors, and others, Schmidts conception of herself and general lack of democratic thinking, Ms. Gibson's form of oppressiveness has been previously addressed, and attachments from the U.S. Constitution regarding freedom of speech are to be provided in this document--to call the police for trying to communicate with her lack of proper reasoning, is oppressive and undemocratic, to say the least.

NO WARRANT WAS ISSUED FOR THE BREAK_IN ON MAY 29.1999, upon which the Hampshire Superior Court case was entered. How the town's attorney at that time, could get an exaggerated complaint , based on illegally obtained material, and containing an altered building inspector's statement, by a Superior Court judge, is incomprehensible.

The Fourth Amendment was used to carve out constitutuonally protected areas, namely, "privacy inhering in the place," in these cases: Olmstead vs. U.S 277 U.S,.438, 928, Stanley vs. Georgia, Public Utilities vs. Pollak, and Erznoznik vs. City of Jacksonsville (422 U.S. 205.1975) Attachments include Gibson's demo memo attesting contempt of the appeal right, and she was fully informed prior to the demo, that an appeal was in process---also attached documentation refuting what was in the judge's "order" (ref

reply letter) about water & electricity being off. An appeal hearing could have cleared this up and prevented losses outlined in this document.p

Respectfully submitted,

(Miss) Paula J. Pavelcsyk

EXHIBIT "C"__COPY OF RED POWER SHUTOFF DEVIC (MASS. ELECTRIC #0707585 APPLIED 5/31/99 FOLLOWUIING A CALL BY IRA GABIELSON AND CREATING A SANITITATION PROBLEM. BOH MADE THE PUBLIC THINK I MAINTAINED UNCLEAN CONDITIONS! I leave to the court's discretion to impose penalties for whatever crimes this form of dirty politics represent.

Other attachments have been referred to in the document.

(EXHIBIT B)

U. S. Court of Massachusetts

Springfield, Massachusetts

FILED
OFFICE
2003 OCT 20 P 4:53

PAVELCSYK )

VS. ) October 19, 2003

WILLIAMSBURG BOARD OF HEALTH )

1. On October 20, 2000, the Williamsburg Board of Health entered material illegally obtained in an attempt to demolish my mobilehome because they had a misunderstanding of my wiring and septic facilities. In spite of proo that both of these were functional, they persisted in the demolition drive three years, resulting in defamatory inaccurate information being given to the media and a power shutoff that prevented my usual cleaning and home maintenance by disabling my electric water pump and disallowing the operatio of an electric furnace--cold and condensation had actually damaged a portion the ceiling--prior to the shutoff there were only minor cracks in one wall. This document is entered within the 3-yr. statute, since 10/19/03 was a Sunday, (relevant to #1 infraction by BOH)

2. There were several violations of due process in the court proceedings-trials based on the wrongful assumptions of one BOH inspector were allowed to proceed without my being able to obtain an attorney, and BOH violated an injunction that mandated the permission of the homeowner in inspection date-setting. The trial itself had represented their malicious abuse of process-a WMLS attorney had noticed that the law as regards demolitions had been misapplied by the town's BOH. Police misconduct resulted in three false arrests and a wrongful hospitalization and more bad publicity.

3. The U.S.Constitution protects citizens from unreasonable search and seizure, and the actual demolition, which occured 5/28/02, was not only based on a mistrial, but ignored an appeal I had filed to get a hearing t clarify what their misunderstandings were. The building inspector never /

Exhibit "C"



There are also pieces of broken expensive dishes, records, other valuables which can be "likewise" "photo'ed" as above, or brought to court.

# Williamsburg seeks court help in trailer dispute

By BARNEY BEAL
Staff Writer

**WILLIAMSBURG** — The town is seeking a ruling in Superior Court to have a trailer at 27 North Farms Road brought into compliance with sanitary codes and permission to demolish the structure should its owner fail to do so.

Piles of debris littering the yard and the contents of the trailer are at the core of a 1½-year dispute between the town and property owner, 52-year-old Paula Pavelczyk.

A preliminary hearing will be held Nov. 6 on an injunction filed Oct. 20 by the town in Superior Court.

According to court records, Police Officer Daniel Warner noticed a strong oder of rotten material when he responded to a request for a check on Pavelczyk's well-being May 29, 1999, at the trailer.

After speaking with neighbors and learning that Pavelczyk had not been seen for weeks, Warner forced open the door.

According to the suit, Warner could not open the door more than five inches because of trash in front of the door. Upon sticking his head through the opening noticed the floor was piled with trash.

That visit has touched off a debate between Pavelczyk, who said the debris is an issue of property rights and town health officials who say it is a health hazard.

Contacted Monday, Pavelczyk disputed claims that the trailer is ready to fall down. Pavelczyk said she has begun removing the rubbish with a pushcart despite the fact that she is without a car and has a back injury.

"They are destroying my right to happiness and sense of place," Pavelczyk said. "They have used the building inspector, the police and now the court system to get their way."

"Almost every town has this kind of issue," Williamsburg Health Agent Maxine Schmidt said Thursday. "It's not uncommon and it's really, really hard to deal with."

Schmidt said after inspecting the property in May 1999, she found health code violations including insect infestation of the kitchen, a sewage system not in compliance with Title V regulations and failure to comply with sanitary codes concerning garbage and rubbish.

According to Schmidt, the debris create several potential problems, including providing nesting space for rodents and the threat of fire. There are space heaters located on top of newspapers in the trailer, Schmidt said.

Pavelczyk's property is located about 60 feet from her neighbor's house.

According to court documents, on May 30, 1999, the town ordered Pavelczyk to vacate the trailer, but she refused. Additionally, the Board of Health later voted to allow Pavelczyk to enter the property to clean it. The town and neighbors volunteered to offer assistance, but Pavelczyk allegedly threatened to shoot anyone entering her property without her permission, ...

On June 28, 1999, the Board of Health issued a demolition order. According to the suit, Pavelczyk last spring reoccupied the trailer in violation of the condemnation order.

Pavelczyk, who inherited the land and has lived there for 40 years, said she was living in a tent in the woods for part of the summer and staying at a motel where she worked, which eventually cost her the job. She now works nights and is spending her days at the trailer.

Pavelczyk said the town's actions have constituted harassment, calling it a "stupid power struggle."

Additionally, the attention brought to the case has been an embarrassment, Pavelczyk said. Keeping her cat in a room of the trailer while it was recovering from a leg injury was turned into a story around town that she was keeping a wild animal chained at the property. "I don't need public ridicule to clean my house," she said.

a few

I couldn't get to the bathroom in time

EXHIBIT D

Proof of defamation/slander

Statements here are inaccurate + misleading —

see exhibit F also ← refutes above statement re septic

Exhibit E

Proof that the power was on at the time of Rup's inspection and on demo day (EBILT) "order" stated it was off APPEAL hearing was needed

FEB 02

Account Number
54304 18700 01

Pay This Amount
$239.10

Amount Enclosed
$

Massachusetts Electric
A National Grid Company
www.masselectric.com

#BWNFKKP **R001
#5430418700015#
PAULA PAVELCZYK
27 NORTH FARMS RD
HAYDENVILLE MA 01039-9724

105543041870001 0000023910

& 3 18 B2

PAYMENTS POSTED BY MAR 25 WILL APPEAR ON YOUR NEXT BILL

Please mail your payment to: Processing Center, Woburn MA 01807-0005.

Massachusetts Electric
A National Grid Company
www.masselectric.com

DUPLICATE BILL

IF YOU HAVE ANY QUESTIONS ABOUT THIS BILL, CALL 1-800-322-3223
OR E-MAIL US VIA THE INTERNET: MASSELECTRIC@US.NGRID.COM

Pay This Amount
$239.10

Account Number
54304 18700 01

Bill Date
FEB 25 2002

SERVICE ADDRESS
27 NORTH FARMS RD P 8-01 HAYDENVILLE MA

105543041870001
PAVE, CY. 18

***** HAVE YOU FORGOTTEN *****
WE ARE BRINGING TO YOUR ATTENTION THE BALANCE ON THIS BILL WHICH MAY HAVE BEEN OVERLOOKED. PLEASE CONTACT CUSTOMER SERVICES AT 1-888-211-1313 IF YOU NEED TO REPORT A PAYMENT, ESTABLISH A PAYMENT PLAN OR OBTAIN A LISTING OF LOCAL PAYMENT AGENCIES. IF YOU HAVE MADE A RECENT PAYMENT WHICH MAY NOT HAVE CLEARED OUR RECORDS, WE THANK YOU.

SERVICE PERIOD
JAN 24 TO FEB 22 2002 29 DAYS

TYPE OF METER READING
ACTUAL

| METER NUMBER | RATE | METER READING PRESENT | METER READING PREVIOUS | KWH USAGE |
|---|---|---|---|---|
| 052582171 | R-2 | 35335 | 33933 | 1402 |

A SPECIAL OFFER FOR YOU - FREE DELIVERY OF OFFICE SUPPLIES WITHIN 2 BUSINESS DAYS! ORDER FROM OFFICE DEPOT ONLINE AT WWW.MASSELECTRIC.COM. AND LINK TO THE SPECIAL OFFICE DEPOT SITE. BESIDES FREE DELIVERY, YOU'LL RECEIVE LOWER PRICING ON KEY BUY LIST PRODUCTS TOO!

NEXT METER READING DATE
MARCH 25

| MONTH | TOTAL KWH |
|---|---|
| F 02 | 1402 |
| J 02 | 1696 |
| D | 718 |
| N | 462 |
| O | 288 |
| S | 168 |
| A | 188 |
| J | 181 |
| J | 180 |
| M | 222 |
| A | 1028 |
| M | 1414 |
| F 01 | 1430 |

Bill payable upon receipt to Massachusetts Electric Company. Additional information on reverse side.

MAR 02

Account Number
54304 18700 01

Pay This Amount
$220.29

Amount Enclosed
$ ______

Massachusetts Electric
A National Grid Company
www.masselectric.com

#BWNFKKP **R001
#5430418700015#
PAULA PAVELCZYK
27 NORTH FARMS RD
HAYDENVILLE MA 01039-9724

105543041870001 0000022029

18
& 3 B2

PAYMENTS POSTED BY APR 23 WILL APPEAR ON YOUR NEXT BILL

Please mail your payment to: Processing Center, Woburn MA 01807-0005.

Massachusetts Electric
A National Grid Company
www.masselectric.com

DUPLICATE BILL

IF YOU HAVE ANY QUESTIONS ABOUT THIS BILL, CALL 1-800-322-3223
OR E-MAIL US VIA THE INTERNET: MASSELECTRIC@US.NGRID.COM

Pay This Amount
$220.29

Account Number
54304 18700 01

Bill Date
MAR 26 2002

NEXT METER READING DATE
APRIL 23

| MONTH | TOTAL KWH |
|---|---|
| M 02 | 1272 |
| F | 1402 |
| J 02 | 1696 |
| D | 718 |
| N | 462 |
| O | 288 |
| S | 168 |
| A | 188 |
| J | 181 |
| J | 180 |
| M | 222 |
| A | 1028 |
| M 01 | 1414 |

SERVICE ADDRESS
27 NORTH FARMS RD P 8-01 HAYDENVILLE MA

105543041870001
PAVE, CY. 18

***** HAVE YOU FORGOTTEN *****

WE ARE BRINGING TO YOUR ATTENTION THE BALANCE ON THIS BILL WHICH MAY HAVE BEEN OVERLOOKED. PLEASE CONTACT CUSTOMER SERVICES AT 1-888-211-1313 IF YOU NEED TO REPORT A PAYMENT, ESTABLISH A PAYMENT PLAN OR OBTAIN A LISTING OF LOCAL PAYMENT AGENCIES. IF YOU HAVE MADE A RECENT PAYMENT WHICH MAY NOT HAVE CLEARED OUR RECORDS, WE THANK YOU.

SERVICE PERIOD
FEB 22 TO MAR 25 2002 31 DAYS

TYPE OF METER READING
ACTUAL

| METER NUMBER | RATE | METER READING PRESENT | METER READING PREVIOUS | KWH USAGE |
|---|---|---|---|---|
| 052582171 | R-2 | 36607 | 35335 | 1272 |

Bill payable upon receipt to Massachusetts Electric Company. Additional information on reverse side.

APR 02

Account Number
54304 18700 01

Pay This Amount
$279.19

Amount Enclosed
$

Massachusetts Electric
A National Grid Company

#BWNFKKP **R001
#5430418700015#
PAULA PAVELCZYK
27 NORTH FARMS RD
HAYDENVILLE MA 01039-9724

105543041870001 0000027919

18
* 3 B2

PAYMENTS POSTED BY MAY 22 WILL APPEAR ON YOUR NEXT BILL

Massachusetts Electric
A National Grid Company

**Duplicate**

*To Reach Us*
Phone: 1-800-322-3223
E-mail: masselectric@us.ngrid.com
Website: www.masselectric.com

Pay This Amount
$279.19

Account Number
54304 18700 01

Bill Date
APR 24 2002

SERVICE ADDRESS
27 NORTH FARMS RD P 8-01 HAYDENVILLE MA

105543041870001
PAVE, CY. 18

***** IMPORTANT NOTICE *****

OUR RECORDS INDICATE YOUR ACCOUNT WILL BE 48 DAYS OVERDUE AS OF MAY 16, 2002. THEREFORE, WE WILL SCHEDULE YOUR ACCOUNT FOR TERMINATION IF THE OVERDUE BALANCE IS NOT PAID. IF WE TERMINATE THE SERVICE, THE ENTIRE AMOUNT OF $220.29 MUST BE PAID BEFORE SERVICE CAN BE RESTORED AND A $15.00 RECONNECTION CHARGE MAY BE APPLIED TO YOUR ACCOUNT. PLEASE CONTACT CUSTOMER SERVICES AT 1-888-211-1313 IF YOU NEED TO REPORT A PAYMENT, ESTABLISH A PAYMENT PLAN OR OBTAIN A LISTING OF LOCAL PAYMENT AGENCIES.

NEXT METER READING DATE
MAY 22

SERVICE PERIOD
MAR 25 TO APR 23 2002 29 DAYS

TYPE OF METER READING
ACTUAL

| METER NUMBER | RATE | METER READING PRESENT | METER READING PREVIOUS | KWH USAGE |
|---|---|---|---|---|
| 052582171 | R-2 | 37300 | 36607 | 693 |

IMPORTANT MESSAGE: EFFECTIVE MAY 5,2002, THE CALL CENTER BUSINESS HOURS WILL BE MONDAY THROUGH SATURDAY, 7:00 AM TO 9:00 PM. POWER OUTAGE AND EMERGENCY CALLS, WILL BE ANSWERED AROUND THE CLOCK, AS ALWAYS.

BUY A YANKEE MAGAZINE SUBSCRIPTION & HELP KEEP NEW ENGLAND GREEN! WITH YOUR PAID SUBSCRIPTION, YOU WILL ALSO RECEIVE A FREE GIFT: A GARDENER'S COMPANION, AND $5 IS DONATED TO NE ENVIRONMENTAL GROUPS. THE PRICE IS $15.99 FOR A FULL YEAR- A 55% SAVINGS! CALL YANKEE MAGAZINE AT 1-800-333-9113 AND ASK FOR EXTENSION 0184 TODAY!

| MONTH | TOTAL KWH |
|---|---|
| A 02 | 693 |
| M | 1272 |
| F | 1402 |
| J 02 | 1696 |
| D | 718 |
| N | 462 |
| O | 288 |
| S | 168 |
| A | 188 |
| J | 181 |
| J | 180 |
| M | 222 |
| A 01 | 1028 |

Make check payable to Massachusetts Electric Company • *Mail to:* Processing Center, Woburn MA 01807-0005 • Additional information on reverse side.

MAY 02

Account Number
54304 18700 01

Pay This Amount
$90.37

Amount Enclosed
$

Massachusetts Electric
A National Grid Company

#BWNFKKP **R001
#5430418700015#
PAULA PAVELCZYK
27 NORTH FARMS RD
HAYDENVILLE MA 01039-9724

105543041870001 0000009037

18
+ 3 B2

PAYMENTS POSTED BY JUN 21 WILL APPEAR ON YOUR NEXT BILL

Massachusetts Electric
A National Grid Company

**Duplicate**

*To Reach Us*
Phone: 1-800-322-3223
E-mail: masselectric@us.ngrid.com
Website: www.masselectric.com

Pay This Amount
$90.37

Account Number
54304 18700 01

Bill Date
MAY 23 2002

NEXT METER READING DATE
JUNE 21

| MONTH | TOTAL KWH |
|---|---|
| M 02 | 760 |
| A | 693 |
| M | 1272 |
| F | 1402 |
| J 02 | 1696 |
| D | 718 |
| N | 462 |
| O | 288 |
| S | 168 |
| A | 188 |
| J | 181 |
| J | 180 |
| M 01 | 222 |

SERVICE ADDRESS
27 NORTH FARMS RD P 8-01 HAYDENVILLE MA

105543041870001
PAVE, CY. 18

***** COLLECTION REMINDER *****
REGRETFULLY, WE MUST INFORM YOU THAT YOUR ACCOUNT IS NOW OVERDUE. YOUR PAYMENT OF $29.19 MUST BE RECEIVED PROMPTLY IN ORDER TO AVOID FUTURE COLLECTION ACTIVITY. PLEASE CONTACT CUSTOMER SERVICES AT 1-888-211-1313 IF YOU NEED TO REPORT A PAYMENT, ESTABLISH A PAYMENT PLAN OR OBTAIN A LISTING OF LOCAL PAYMENT AGENCIES. IF PAYMENT HAS ALREADY BEEN MADE, PLEASE DISREGARD THIS REQUEST.

SERVICE PERIOD
APR 23 TO MAY 22 2002 29 DAYS

TYPE OF METER READING
ACTUAL

| METER NUMBER | RATE | METER READING PRESENT | METER READING PREVIOUS | KWH USAGE |
|---|---|---|---|---|
| 052582171 | R-2 | 38060 | 37300 | 760 |

PLEASE SEE THE ENCLOSED INFORMATION REGARDING THE RELEASE OF YOUR CUSTOMER ACCOUNT INFORMATION TO COMPETITIVE SUPPLIERS.

THE SERVICE QUALITY CREDIT LISTED ON THIS BILL REPRESENTS A REFUND ASSESSED FOR MASSACHUSETTS ELECTRIC'S SERVICE QUALITY PERFORMANCE DURING THE PERIOD OF MAY 1,2000 TO DECEMBER 31,2001.

BUY A YANKEE MAGAZINE SUBSCRIPTION & HELP KEEP NEW ENGLAND GREEN! WITH YOUR PAID SUBSCRIPTION, YOU WILL ALSO RECEIVE A FREE GIFT: A GARDENER'S COMPANION, AND $5 IS DONATED TO NE ENVIRONMENTAL GROUPS. THE PRICE IS $15.99 FOR A FULL YEAR- A 55% SAVINGS! CALL YANKEE MAGAZINE AT 1-800-333-9113 AND ASK FOR EXTENSION 0184 TODAY!

**Make check payable to Massachusetts Electric Company • *Mail to:* Processing Center, Woburn MA 01807-0005 • Additional Information on reverse side.**






COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON MA 02198 (617) 292-5500

ARGEO PAUL CELLUCI — TRUDY COXE

# SUBSURFACE SEWAGE DISPOSAL INSPECTION FORM
## PART A - CERTIFICATION

**Property Address:** 27 North Farms Road, Williamsburg, MA **Owner's Name:** Paula Pavelcsyk
**Date of Inspection:** 10/4/02 **Owner's Address:** PO Box 435, Haydenville, MA 01039
**Copy to:** Board of Health, Williamsburg; **Witness:** Don Laughton **Number:** SSDS-728
**Name of Inspector:** Thomas S. Leue **Company Name:** Homestead Inc.
**I am a DEP approved system inspector pursuant to Section 15.340 of Title 5 (310 CMR 15.000)**
**Company Address:** 1664 Cape St., Williamsburg, MA 01096 **Telephone:** (413) 628-4533

**CERTIFICATION STATEMENT**

I certify that I have personally inspected the sewage disposal system at this address and that the information reported is true, accurate and complete as of the time of the inspection. The inspection was performed based on my training and experience in the proper function and maintenance of on-site sewage disposal systems. I do not represent or warrant the operation or proper function of this system for any period of time.

The system condition evaluation: **Location Only**

**INSPECTION SUMMARY:**

This inspection is in accordance with 15.301(2) whereby the facility is planned for a change in use or expansion for which a building permit or occupancy permit from the local building inspector is required.

1. The system has sufficient capacity for the intended use?
   No ____ Yes X____ Undetermined ______
   Note: Sufficient for 1 bedroom addition only.

2. The change in use or expansion will affect the building footprint?
   No ____ Yes X____ N/A

3. All system components, including the reserve area, have been identified on site?
   No ____ Yes X____

4. The proposed construction, if any, will not be placed upon any system component?
   No ____ Yes X____ N/A

Signature: Thomas S Leue Date: October 4, 2002

The System Inspector shall submit a copy of this inspection report to the Approving Authority within thirty (30) days of completing this inspection. If the system is a shared system or has a design flow of 10,000 gpd or greater, the inspector and the system owner shall submit the report to the appropriate regional office of the Department of Environmental Protection. The original should be sent to the system owner and copies to the buyer, if applicable and the approving authority.

Exhibit G

# Kirke R. Henshaw. Inc.

130 Cummington Road
West Chesterfield, MA 01084
(413) 296-4725
(800) 232-4725 (in MA only)

# Invoice

| DATE | INVOICE # |
|---|---|
| 3/1/2002 | 1256 |

PAID

| BILL TO |
|---|
| Paula Pavelcsyk<br>27 North Farms Rd<br>Hatdenville MA 01039 |

| TERMS | LOCATION |
|---|---|
| Due Upon Receipt | Same as Mailing |

DESCRIPTION

Service call to repair water system by installing a new Franklin Electric motor control, pressure guage.

Total Amount Due: $125.00

8-mo. power shutoff caused switch to stick

Thank you.
Kirke R. Henshaw

**Total** $125.00

1.5% (18% Per Annum) per month on unpaid balance will be charged on accounts past due 30 days. A $25.00 fee will be charged for all returned checks.

Exhibit H proof of potable water

Sample # 9940

HOWARD LABORATORIES OF NEW ENGLAND, INC.
750 North Pleasant Street
Amherst, MA 01002
Phone: (413) 549-8260 Fax: (413) 549-1850
MA Lab License: M-00851

# WATER ANALYSIS REPORT

Analyzed For: Paula Pavelcsyk
Address: P.O. Box 435
Haydenville, MA 01039

Telephone:

Sample Location: 27 North Farms Road
Haydenville, MA
Sampled By: HWD
Date Sampled: 9/11/02
Date Received: 9/11/02

| PARAMETER | RESULTS | LIMITS | COMMENTS |
|---|---|---|---|
| Total Coliform Bacteria | 0 Colonies/ 100ml | 0 Colonies/ 100ml | OK |
| pH | * 6.15 pH Units | 6.5 - 8.5 pH Units | * |
| Manganese | 0.010 mg/l | 0.05 mg/l | OK |
| Hardness | 42 mg/l | No Standard | <50 SOFT. >100 HARD |
| Conductivity | 0.14 mS/cm | No Standard | No Standard |
| Chloride | 23.2 mg/l | 250 mg/l | OK |
| Iron | 0.28 mg/l | 0.3 mg/l | OK |
| Sodium | 12 mg/l | 28 mg/l | OK |
| Nitrate | 0.9 mg/l | 10 mg/l | OK |
| Nitrite | 0.002 mg/l | 1 mg/l | OK |
| Color | 10 PtCo Color Units | 15 PtCo Color Units | OK |
| Turbidity | 5.5 NTU | 5 NTU | OK |

(Mass. standard 6.5-8.5 still OK) ←

Recommendations: See enclosed MA DEP Interpretations sheet for parameters marked with an asterisk

This sample meets acceptable standards of potability for the parameters tested, except for those parameters marked with an asterisk (*).

Analyst: BG
Checked By: Jonathan Begg [signature]
Laboratory Supervisor

Date: 9/18/02

Exh 14 I

# FOOTHILLS HEALTH DISTRICT

FRANKLIN COUNTY
Whately & Ashfield
P.O. Box 196
Whately, MA 01093
(413) 665-8051

HAMPSHIRE COUNT
Goshen & Williamsbur
P.O. Box 44
Haydenville, MA 0103
(413) 268-8404

proof that BOH's antics prevented bldg inspector's inspection

29 September 1999

Paula Pavelczyk
27 North Farms Road
Haydenville, MA 01039

Dear Paula,

The Board of Health, at its last meeting, got an offer from the Fire Department to bring their generator and lights to your house to provide some light for you to do some cleaning so that the Electrical Inspector can check the wiring and the Building Inspector can finish his inspection. Once they complete those inspections, we'll know exactly what work needs to be done before the power is turned back on in the house, and what needs to be done before you can move back to the house.

I realize it's getting cold now, and it would be a good idea to complete as much of the work as possible before it gets too cold.

Please call me as soon as possible so we can arrange for the generator.

Sincerely,

Maxine

Maxine Schmidt
Health Agent

C:\LOTSUITE\AMIPRO\FOOTHILL\WMSBURG\LETTERS\PAVLZYK2.SAM

Exhibit J

Commonwealth of Massachusetts




# Town of Williamsburg

141 Main Street, P. O. Box 447
Haydenville, Massachusetts 01039-0447

Tel: (413) 268-8400 Fax: (413) 268-8400

April 11, 2003

Dear Paula,

We received your phone message of April 10, 2003. Your message indicated that one of your neighbors informed you that Maxine Schmidt, the health agent, will be involved in the purchase of a mobile home for your North farms Road property. I believe that this information is erroneous and that your neighbor is misinformed. Ms. Schmidt has no role whatsoever in the acquisition of a new home for your property. As far as I know, that acquisition is entirely a matter between HCDC and yourself.

I hope this note sets your mind at ease on this matter.

Sincerely yours,

Christopher S. Morris
Chair
Board of Selectmen

Selectmen begin to realize they have a problem with a health agent's reasoning.

The Town of Williamsburg is an Equal Opportunity Employer.

EXHIBIT K

# FOOTHILLS HEALTH DISTRICT

FRANKLIN COUNTY
Whately & Ashfield
P.O. Box 196
Whately, MA 01093
(413) 665-8051

HAMPSHIRE COUNTY
Goshen & Williamsburg
P.O. Box 763
Williamsburg, MA 01096
(413) 268-8404

Registered mail 7099 3220 0100 3072 5792
Regular Mail

May 18, 2002
RE: 27 North Farms Road, Williamsburg

Paula Pavelczyk
27 North Farms Road
Haydenville, MA 01039

"Donna Gibson's demo memo"

Dear Ms. Pavelczyk,

Under the terms of a judgement issued by Judge Mary Lou Rup, Hampshire Superior Court, dated March 8, 2002, the Williamsburg Board of Health has been forced to schedule the demolition and removal of the mobile home and garbage and any rubbish located on your property at 27 North Farms Road for **May 28, 2002 commencing at 9:00 a.m.**. (See enclosed Memorandum of Decision and Order, Docket 00-240) This action was initiated as a consequence of your violations of 105 CMR 410.000 State Sanitary Code, Chapter 2: Minimum Standards of Fitness for Human Habitation. The electricity and telephone will be shut off and disconnected several days beforehand to ~~ensure no safety hazard to the workmen~~. Once the demotition and removal process is complete, **you may not reoccupy** the property without obtaining the prerequisite permits, including an occupancy permit.

Clear property rights violation!

tion by insects and rodents, poor plumbing facilities, and inadequate recreational and rehabilitative programs at correctional institution. Blake v Hall (1979, DC Mass) 469 F Supp 1025.

## § 127B. Dwellings Unfit for Human Habitation; Remedies.

Upon a determination by the board of health, or, in the cities of Boston, Worcester and Cambrigde by the commissioner of housing inspection, after examination as provided in said code, that a building, tenement, room, cellar, mobile dwelling place or any other structure (a) is unfit for human habitation, (b) is or may become a nuisance, or (c) is or may be a cause of sickness or home accident to the occupants or to the public, it may issue a written order to the owner or occupant or any of them thereof, requiring the owner or occupant to vacate, to put the premises in a clean condition, or to comply with the regulations set forth in said code which are not being complied with or to comply with the rules and regulations adopted by the board of health as being necessary for the particular locality. The order shall be served in the same manner as is provided for the service of an order by section one hundred and twenty-four. A copy of such order shall be served upon any mortgagee or lienor of record by sending the same by registered mail, return receipt requested. If the owner or occupant refuses to comply with such order, the board of health may cause the premises to be properly cleaned at the expense of the owner or occupant, remove the occupant forcibly and close up the premises, or it may issue a written notice to the owner of such building, as appearing in the current records of the assessors of such town, setting forth the particulars of such unfitness and requiring that the conditions be remedied. If the person so notified fails within a reasonable time to remedy the conditions thus set forth, the superior court on a petition in equity brought by the board of health, shall have jurisdiction, to enforce the requirements of the board of health, by appointment of a receiver in accordance with the provisions of section one hundred and twenty-seven I, or by providing other equitable or legal relief. A copy of such written notice shall be served upon any mortgagee or lienor of record, by sending the same by registered mail, return receipt requested. No occupant of any residential premises may be removed, nor any order to vacate issued to any such occupant, unless the board of health has previously issued a written finding that the premises are unfit for human habitation. The board shall enter in said finding the material facts upon which such finding is based. No such finding shall be made before said occupants have been given written notice and an opportunity for a public hearing to be held not less than five days after receipt of such notice, unless the board of health determines in writing that the danger to the life or health of the occupants is so immediate that no delay may be permitted. In all other cases in which the





board of health determines the residential premises are not unfit for human habitation but that conditions within such premises in violation of said code or rules and regulations may not be remedied unless the occupants are removed therefrom, it may bring an action to remove the occupants from the premises pursuant to chapter two hundred and thirty-nine. In any such action, the court shall consider the matter according to the procedures and standards otherwise set forth in said chapter, and may grant a stay or stays of execution when appropriate. Premises closed up under the provisions of this section shall not be occupied as a human habitation without written permission of the board of health. If compliance with the regulations contained in said code has not been effected within one year from the date the premises have been so closed up the board of health may cause such structure to be demolished or removed; provided, however, that said board, upon written certification to it by the head of the local health department that immediate demolition or removal is essential to protect the health and safety of the public, may cause such demolition or removal within ninety days of said closing. A claim for the expense incurred by said board in cleaning the premises or in causing such structure to be demolished or removed shall constitute a debt due the city or town upon the completion of the work and the rendering of an account therefor to the owner of such structure, and shall be recoverable from such owner in an action of contract.

The provisions of the second paragraph of section three A of chapter one hundred and thirty-nine relative to liens for such debt and the collection of the claims for such debt, shall apply to any debt referred to in this section, except that the board of health, or, in the cities of Boston, Worcester and Cambridge, the commissioner of housing inspection, shall act hereunder in place of the mayor or board of selectmen.

Local boards of health shall enforce said code in the same manner in which local health rules and regulations are enforced but if any such local board fails after the lapse of a reasonable length of time to enforce the same, the department may in like manner enforce said code against any violator.

The superior court, housing court, and district court shall have jurisdiction in equity to enforce the provisions of said code.

A board of health and, in the cities of Boston, Worcester and Cambridge the commissioner of housing inspection, or local code enforcement agency may file a petition under section one hundred and twenty-seven H.

A copy of the report of any investigation or inspection of residential premises for violations of the code or other applicable laws, or-

dinances, by-laws, rules or regulations, and of any written order or notice issued by the board, shall be delivered personally or sent by first class mail to the occupants of all affected premises within seven days after the investigation or inspection of the premises or the issuance of the order or notice. A notice of the date, time and place of any administrative or court hearings scheduled by or known to the board relating to violations, including all referrals of violations to other government agencies, shall also be delivered or sent to the occupants. All investigation or inspection reports shall include the name of the inspector, and the date and time of the inspection or investigation; the date and time of any scheduled follow-up inspection; a description of the conditions constituting the violations, if any; a listing of the specific provisions of the code or other applicable laws, ordinances, by-laws, rules or regulations that appear to be violated; a determination by the official inspecting the premises whether each violation, or the cumulative effect of all violations, may endanger or materially impair the health, safety or well-being of any occupant or the public; a determination by said official whether any violations appeared to be substantially caused by the occupant or any person acting under his control; and a brief summary of the statutory remedies available to occupants of the affected premises. All reports, orders or notices relating to such inspections, investigations, or violations shall be public records, and shall be kept on file by the originating agency according to law.

Any person aggrieved by the failure of any inspectors or other personnel of the board or other code enforcement agency to inspect upon request any premises that the board or agency may lawfully inspect, or to find violations of law where such violations are claimed to exist, or to certify that such violations may endanger or materially impair the health, safety or well-being of the occupants, may appeal such failure to act to the full board or to the head of the agency. Such appeal shall be given a speedy hearing before said board or an impartial officer of said agency.

—

§ 3; 1966, 78; 1972, 522; 1973, 295, 1973, 920; 1974, 298; ... 1983, 84, §§ 2, 3; 1984, 189, § 81; 1992, 133, § 462, ap- ... by § 599, effective July 1, 1992; 1992, 407, §§ 1–4, ap- ...tive 90 days thereafter.

...receipt o... ing that the dang... diate that no delay may be ...

...aragraph, deleted the former last ...thereof which limited to certain ...red by the board shall con-





**The 1972 amendment** rewrote the eighth sentence of the first paragraph to authorize demolition or removal of certain buildings within ninety days of their closing.

**The first 1973 amendment** added five sentences after the sixth sentence to further regulate removal of occupants.

**The second 1973 amendment** added the last two paragraphs.

**The 1974 amendment** rewrote the first sentence of the sixth paragraph, deleting the reference to § 124 and adding that the inspection report be of residential premises, delivered personally or sent by first class mail.

**The 1978 amendment,** in the first sentence of the first paragraph, and in the fifth paragraph, added the City of Worcester.

**The 1983 amendment,** in the first sentence of the first paragraph, and in the fifth paragraph, added reference to the city of Cambridge.

**The 1984 amendment** was corrective in nature, deleting, in the third paragraph, a comma from between the words "if" and "any".

**The first 1992 amendment** rewrote the second paragraph.

**The second 1992 amendment** by § 1, in the third sentence of the first paragraph, after the words "any mortgagee" inserted "or lienor"; by § 2, in the fourth sentence of the first paragraph, after the words "shall have jurisdiction," substituted "to enforce the requirements of the board of health, by appointment of a receiver in accordance with the provisions of section one hundred and twenty-seven I, or by providing other equitable or legal relief" for "by injunction or otherwise, to enforce the requirements of the board of health"; by § 3, in the fifth sentence of the first paragraph, after the words "served upon any mortgagee" inserted "or lienor"; and by § 4, in the fourth paragraph, after the words "superior court" inserted ", housing court, and district court".

## Cross References—

Concurrent jurisdiction of housing court department in certain districts, ALM GL c 185C § 3.

For a statute providing that violations of standards for human habitation shall constitute a defense in actions of summary process to recover possession of rented or leased premises, ALM GL c 239, § 8A.

## Code of Massachusetts Regulations—

Minimum standards of fitness for human habitation (state sanitary code: chapter 11), 105 CMR 410.001 et seq.

## Total Client-Service Library® References—

7 Mass Jur, Property § 22:18.

8 Mass Jur, Property § 28:145.

13 Am Jur 2d, Buildings §§ 29, 30, 39, 43.

39 Am Jur 2d, Health §§ 29, 33, 41–44.

49 Am Jur 2d, Landlord & Tenant §§ 768 et seq.

2 Am Jur Proof of Facts 2d 823, Uninhabitability of Leased '

merely inconvenienced, your damages would probably be *nominal,* that is, just enough to establish or protect your individual rights.

**40. Misuse of the Legal Process** • Similar to false imprisonment and false arrest, but quite different legally, are what are known as malicious prosecution and abuse of process. You have a right to freedom from the deliberate misuse of the law and the courts.

If you have been unjustly prosecuted for a crime because of someone's malicious accusations, you can sue. You have to prove that the case has been decided in your favor, that there was no real ground ("absence of probable cause") for the proceeding and that the person who started the proceeding was motivated by malice or that his primary motive was not simply to bring you to justice. In the case of false imprisonment or false arrest, you are improperly or falsely detained. In the case of *malicious prosecution,* which we have just described, you are properly detained but for improper reasons or motives.

An example of malicious prosecution is when your neighbor, out of sheer spite or dislike of you, goes down to the police station and accuses you of molesting his young daughter. He is believed; a warrant is issued for your arrest; you are arraigned, plead not guilty, are duly tried and are found innocent by the court. At the trial the testimony of your neighbor and his daughter reveals both his hostility to you and the fact that there was absolutely no basis for the action. You have an action for damages against your neighbor—but not against the police officer who arrested you or against the prosecuting attorney, because they were simply doing their duty.

Although suits for malicious prosecution were originally used only as protection against the improper bringing (and continuing) of criminal actions, they are now used increasingly when civil proceedings are brought for ulterior motives: as when someone starts a civil proceeding for some other reason than simply winning the suit he starts.

Your hostile neighbor may be afraid to accuse you falsely of committing a crime or may decide that he hasn't enough evidence against you to risk a countersuit for malicious prosecution. But he may decide that he can sue you for defamation of his character if he bribes several persons to testify that you have gone around the community spreading stories that he beats his children every night. If you win the action he brings against you and can establish that his real reason for suing you was to injure you financially—that is, that he had an ulterior motive—you may sue him in return for the tort of malicious prosecution, or the

Case 3:03-cv-30312-MAP Document 15-2 Filed 08/23/2004 Page 20 of 20



wrongful bringing of civil proceedings. Your neighbor has interfered with your personal right of freedom from unjustified legal proceedings, and he is liable to you for damages you suffered in defending yourself in these proceedings.

Only slightly different is the tort known as *malicious abuse of process*. The principle is the same: misusing the legal process to harass someone. But abuse of process implies a valid legal proceeding brought for an invalid purpose, or for a purpose different from the one usually sought in the proceeding. If your neighbor sues you for trespass (see section 46) simply to force you to sell him a piece of your property that he's long desired, it is an abuse of process. You have a right to be free from such twistings of the law and may sue him for what it cost to defend yourself.

**41. Interference with Your Person** • You have a right to be free from bodily injury, however slight. You also have a right to freedom from threats of injury that you sensibly believe may be carried out. In recent times the courts have also devised ways to compensate you for suffering or distress that may be more mental than physical or that may be a combination of both.

Assault and battery are two of the oldest torts in legal history. The difference between them is simple. An *assault* is an open threat of bodily contact with someone, without his permission. The actual contact is a *battery*. If you get so mad at your neighbor that you go up to him with a baseball bat and say you'll knock out his brains, you have committed the tort of assault. If you lose control and actually hit him, you have committed the tort of battery. Actual contact is what distinguishes battery from assault, even though the contact may be only a touch or a stolen kiss, if made without permission. The contact may be with your body or anything attached to it, like your clothing or the chair you're sitting in.

The purpose of the courts is to keep the peace by providing a substitute for private fighting, to give you a legal alternative to retaliating physically if someone spits in your face or seizes your coat and shouts at you.

Just as you have a right to freedom from actual offensive contact with your person, so you have a right to freedom from fear of such contact. If someone brandishes a club in your face and starts to swing it as though he were going to hit you, you may sue him for damages for the tort of assault. The action is essentially for a mental, rather than a physical, interference with your rights: the "touching is of the mind, not of the body," as one court put it. Your damages are therefore for mental upset, fright, humiliation and for any physical illness that may result.