YOUR PROTECTION AGAINST WRONGS

But your fear that you will be hurt must be reasonable. Even though you know your neighbor has been involved in several barroom brawls, you have no action against him if he walks menacingly up to your property line and shakes his fist at you but remains fifteen feet away. What is important is the immediacy of physical threat, not the way the threat is made.

**42. Interference with Your Peace of Mind** · The growth in the sciences of medicine and psychology has brought about an expansion of the idea of freedom from fear or apprehension. You may have an action against someone who intentionally inflicts mental suffering on you. For example, if someone falsely tells you that your wife has been struck by a car and rushed to the hospital, you may sue him for the emotional anguish you suffer as a result of his lies. Similarly, you may use this kind of suit to protect yourself against the high-pressure methods of collection agencies that harass you with abuse and accusations and threats of lawsuits.

If the woman who receives a series of lewd and obscene telephone calls could identify the caller, she would probably have an action against him for the mental distress she suffers. So would the person who receives telephone calls falsely reporting the death in wartime of a husband or son—and who suffers severe mental shock as a result. You have a right to freedom from the consequences of this kind of malicious act, and the courts protect the right by awarding damages.

**43. Interference with Your Privacy** · Another right increasingly protected by the courts is the right to *privacy:* your right to be let alone. The right to privacy has been recognized in many lawsuits and now exists in almost all states, either as a result of court decisions or by legislation. Interference with privacy can take many forms. Perhaps the simplest examples are the most obvious: searching your house without a warrant (such a search would also be a trespass, giving you additional grounds for suing the searcher; see sections 46, 303); eavesdropping on your telephone conversations by wiretapping without court consent. A majority of the Supreme Court has held that a person riding in a car "does not lose all reasonable expectation of privacy," and that the police are therefore barred from stopping cars at random to check licenses and registrations.

But there are less direct ways of interfering with your right to privacy that also give you the right to sue. One of these is giving objectionable publicity to private information about you. If the bank where you have your checking account published your name in your local newspaper in

91

a list of persons who had overdrawn their accounts, you would have a right to sue the bank for invasion of your right to privacy—even though you really had overdrawn your account. Your relationship with your banker is contractual (see sections 166–185) and commercial, and he has no right to make public the private facts he knows about you.

**44. Interference with Your Reputation** • As important as any freedom to which you are entitled is freedom from unwarranted, untruthful attacks on your character. This kind of attack, if made in the presence of other people, constitutes *defamation,* for which you are entitled to nominal or punitive damages, as the case may be. If you are defamed orally, you have been *slandered.* If the defamation is in writing and shown to or seen by someone else, you have been *libeled.* Slander is the less serious of the two torts because it is fleeting. The spoken words of defamation exist only as they are uttered and then disappear forever. Libel is permanent as long as the letter, magazine article or book in which the words appear continues to exist, and the damages awarded are therefore usually larger. Generally speaking, defamatory statements made over radio and television are now considered libelous rather than slanderous.

You can recover damages for slander or libel without proving actual financial loss if you are accused of something as serious as having committed a crime or having a "loathsome" disease (such as syphilis) or if you're accused of being a butcher if you are a surgeon or a shyster if you are a lawyer. The reason is that, since the good reputation of a professional person is essential to his ability to make a living, the law assumes that such accusations will diminish that ability and will therefore damage him. Lawyers call this kind of attack slander or libel *per se.*

Remember that to entitle you to recover damages both libel and slander must be "published"—that is, communicated to others. If your neighbor calls you a thief over the backyard fence, with no one else present to hear him, he has not slandered you. Nor has he libeled you just by writing you a letter charging you with bigamy: he must show his letter to you to someone else.

Of course the attacks on you, written or oral, must be untrue to constitute libel or slander. Truth is almost always a perfect defense in an action for either tort. Freedom of speech is one of our most cherished rights. It wouldn't amount to much if we were not free to say things about others that we know to be true. The only exception to this—and it is a rare one—is when the statements were true but the sole motive in making them was to hurt you. The court might in this case hear a suit

[margin annotation: *libel.*]

## YOUR PROTECTION AGAINST WRONGS

*[handwritten annotation: retaliatory]*

for the malicious use of true information. Spreading lies about others is different, however, especially when the lies may affect their ability to make a living or may hurt them in their family or public relationships.

You can go pretty far in expressing your opinion, but you risk a lawsuit if you go too far in commenting on your neighbor's personal traits. An amusing example was provided by the drama critic Heywood Broun, who wrote such a savage attack on an actor's performance in a play that the actor sued for libel. The lawsuit was still in the courts when the same actor appeared in another play. Everyone rushed to see what Broun would say about the actor this time. The actor's performance, Broun wrote simply, "wasn't up to his usual standard."

Another defense, in actions for slander, is that the statement was *privileged*; that is, the person who made it had a special immunity from legal action. Legislators have absolute freedom of expression on the floor of the legislature. So if your congressman makes a speech in the House of Representatives accusing you of having supported the Nazis in World War II, all you can do is write him a letter or issue a statement to the press daring him to make the same charges off the floor of the House—when he won't have his defense of privilege and you may sue him for slander. But don't let your anger goad you into accusing him in public of being a liar and a cheat and a child beater unless you can prove what you say, or you may find yourself being sued. Similarly, judges while conducting their official duties are privileged to say whatever they want. Other public officials have more limited privilege.

Another legal doctrine has grown up in connection with charges of slander and libel. This is the rule of *fair comment*, under which courts have held that public figures and elected and appointed officials must expect and accept a harsher degree of criticism about the conduct of their jobs than private persons. If a newspaper charged the state treasurer with incompetent handling of public funds, this criticism would probably fall under the fair comment rule, because the treasurer's competence is a legitimate subject of public interest. He could not recover damages from the paper in a libel suit. But if the same newspaper attacked a privately owned firm of accountants as being slipshod in its work, the company could probably sue and recover successfully. In 1979 the Supreme Court made it easier for certain people to sue for libel. The legal definition of a "public figure" used to be so broad that it could include ordinary citizens who had appeared in the public light unintentionally, without seeking publicity. Now the Court has said, in effect, that such people are not public figures.

*[handwritten annotation: fair comment rule]*

93

a right
have a
have a
l prop-
cts you
things
ty that
These
books
more

erence
torts:
entire
only.
pond
tenant
your
fire-
prop-

ghbor
perty.
n his
lly to
it. A
t his
ance
sani-
. So
ense.
ivate
n—
ction
for

## YOUR PROTECTION AGAINST WRONGS

damages for the harm caused by the nuisance. Sometimes you may seek both. Frequently you will find that local ordinances prohibit the nuisance, so that it is worthwhile to consult the local public prosecutor and ask him to proceed in the name of the state against the property owner or tenant who is maintaining the nuisance.

You are hearing much more about public nuisances as the public is becoming more concerned about such problems as water and air pollution. The law frequently follows public sentiment, even though courts are often reluctant to put a stop to public nuisances that arise from commercial and industrial uses of property. Anyone who lives in the neighborhood of a chemical plant or a paper mill knows only too well the smells and the water pollution they can cause. The courts must balance the public's interest in industrial production against the public's interest in the enjoyment of clean air and water. Where courts lag, or tend to uphold industrial interests against those of the people as a whole, the legislature steps in and enacts statutes that force industry to devise and install anti-pollutants (see section 608). Much more such legislation is likely to be enacted in years to come. Meanwhile, you and your neighbors have a variety of weapons to use in really intolerable situations (see sections 610–615). Your lawyer, or one of the many citizen watchdog groups that have sprung up in recent years, should be consulted as to which of these weapons to use, when and how.

**46. Keeping Others off Your Property** · If someone comes onto your land or into your house or apartment without your permission, he has committed the tort of *trespass*, and you may sue him even though he does no damage whatever to your land, house or apartment. As the person legally in possession, you are entitled to the complete and unrestricted "quiet enjoyment" of your property, even though you may be only the tenant. Indeed, if you are the tenant you, not the landlord, are the only person who can bring the action for trespass. Again, the amount of the damages you will be awarded depends on the circumstances. For trespass and nothing more your damages would be nominal, or very small, but enough to assert your rights and to warn others not to interfere with them.

In fact, you must assert your rights over your property or run the risk of losing some of those rights. For example, you own a field between a public road and a school, and children get into the habit of freely and openly crossing over your field in going to and from school. If they do so for a long period of time—usually from ten to twenty years—the public may be held to have won or gained the right to use your property. This

YOU AND THE LAW

is called a *prescriptive right*. You are said in effect to have surrendered your right to the exclusive use of your own property by failing ever to mention or complain about the trespassers (see section 302 and chart 19).

A famous example of this principle is Rockefeller Plaza, a short street that runs in front of the RCA Building in New York City. Although the street is privately owned it is generally open to traffic. But on one day a year it is closed to vehicles just to protect the owners' rights against any claim that the property has become a public way by default.

In some cases you may actually lose the ownership of property entirely if you allow others to occupy and use it as if it were their own over a long period of time (see section 302). For example, a mistake was made in a survey of your property years ago. A new survey shows that ever since you moved in, your neighbor has been using, as part of his croquet court, land that was actually yours. Ownership of that bit of land may therefore actually have passed to him.

Your right to the exclusive use of your property extends both upward and downward for a reasonable distance. Your neighbor may not legally build a house in a tree next to your property line if part of the tree house extends over your property. Nor may he legally tunnel under your property to reach a river on the other side in order to get water from it for his own use. An airline may fly high over your property without giving you an action for trespass—but the pilot of a small plane who regularly flies it barely over the treetops is trespassing. How high must the pilot fly to be free from damages for trespass? The question is one the courts have not settled.

The airplane problem more often arises where property owners next to an airport are harassed by the noise of aircraft taking off and landing. There is a technical tort of trespass, to be sure, but the property owners have usually sued for the tort of a public nuisance. The problem is like the one that confronts the family living near the chemical factory. And here, too, the courts are caught between the public's interest in encouraging the development of air travel and the property owners' right to enjoy their property free from excessive noise. Despite their very legitimate grievances, property owners usually come out on the losing side of these airport cases, providing an excellent demonstration of why you should check present and future development plans in an area before you buy a house (see section 277).

**47. The Misuse of Your Personal Property** · You also have a right to the unrestricted and uninterrupted enjoyment of your personal property,

96

just as you do the enjoyment of your real property. The law provides remedies for the intentional interruption of your right or interference with it. Interference with your personal property is known as the <u>tort of conversion.</u> It can be conduct intended to affect your personal property or conduct that, even though not intentionally wrong, is inconsistent with your right of ownership. Let's say that you sell your house, move out and leave some barrels in the cellar. If the buyer, believing you have abandoned them, sells them as junk, you may sue him for conversion. The purchaser of goods stolen from you or the auctioneer who innocently sells them is also a converter, because even though he did not know it he has interfered with your control of your property. You are entitled to recover the value of the goods from him. In effect, the defendant in these cases is required to buy the goods from you at a forced sale. This is the reason you yourself should avoid buying anything of questionable or suspicious origin.

But common sense should dictate your decision to sue for conversion. If someone removes your coat from your hanger at the office, but returns it half an hour later when he discovers it is not his, you would not win an action for conversion. But if he kept your coat a year, or intended to sell it to someone else when he took it, he would be liable.

Other common examples of conversion are: (a) Your property is borrowed and used without your permission: your neighbor, without your knowledge or permission, removes your lawnmower from your garage and uses it. (b) Someone <u>intentionally alters</u> the property you have loaned him: your wife lends her long evening dress to your neighbor's wife, who proceeds to convert it into a miniskirt. (c) Someone to whom you loaned your property uses it in a different way from that upon which you had agreed: you lend your car to someone to travel to the suburbs for the weekend, and he returns it a week later having traveled 500 miles. In all these cases, your control of your property has been interfered with, and you are entitled to sue for the tort of conversion.

**48. Interference with Your Contractual and Business Relationships** · You have a right to freedom from interference by others with the contractual relationships you have entered into. (For a full discussion of contracts see chapter 5, "Your Personal Property, Contracts and Purchases," page 185). This right extends to your family relationships too. If your mother-in-law persuades your wife to leave you, you may sue her for interfering with your marriage.

If you are a well-known artist, commissioned to paint a mural in a

Exhibit X

sample rental receipts

$400/mo rent ~~since~~ 7/1/02 – 8/1/02 | $364/mo rent since Nov 1, 2002

(2 different lodgings)









TOPS FORM 46808 ®

**RECEIPT**

DATE 11/3/03 NO. 4995

RECEIVED FROM Paula Pavelcsyk

ADDRESS Flo. MA #11

One Hundred — DOLLARS $ 100—

FOR Rent

| ACCOUNT | | | HOW PAID | | |
|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | |
| AMT. PAID | | | CHECK (circled) | | |
| BALANCE DUE | | | MONEY ORDER | | |

BY C. Jablonski

TOPS FORM 46808 ®

**RECEIPT**

DATE Nov. 18, 2003 NO. 4613

RECEIVED FROM Paula Pavelcsyk

ADDRESS 17 N. Maple St. #11 Florence

One hundred twenty-nine and no/100 DOLLARS $ 129.00

FOR Rent

| ACCOUNT | | | HOW PAID | | |
|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | |
| AMT. PAID | | | CHECK | | |
| BALANCE DUE | | | MONEY ORDER | $129 | 00 |

BY Anne J. Graves

TOPS FORM 46808 ®

**RECEIPT**

DATE Aug. 10, 2004 NO. 8515

RECEIVED FROM Paula Pavelcsyk

ADDRESS 17 N. Maple St., Florence, MA #11

One hundred sixty and no/100 DOLLARS $ 160.00

FOR August rent

#4503138386

| ACCOUNT | | | HOW PAID | | |
|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | |
| AMT. PAID | | | CHECK | | |
| BALANCE DUE | | | MONEY ORDER | $160 | 00 |

BY Anne J. Graves

TOPS FORM 46808 ®

**RECEIPT**

DATE Aug. 10, 2004 NO. 8514

RECEIVED FROM Paula Pavelcsyk

ADDRESS 17 N. Maple St., Florence, MA #11

Two hundred four and no/100 DOLLARS $ 204.00

FOR August rent

HAMPSHIRE SUPERIOR COURT
NORTHAMPTON, MA.
RE: CIVIL ACTION #00240-2000
WILLIAMSBURG BOARD OF
HEALTH VS. PAVELCSYK

Exhibit 2

VERIFIED CONTEMPT OF COURT COMPLAINT

ON 4/23/01, DEFENDANT APPEARED BEFORE JUDGE JOSEPHSON AND REQUESTED AN INSPECTOR OTHER THAN MAXINE SCHMIDT. THE JUDGE HNORED THE REQUEST BY STATING "WHOEVER". ON MAY 17, 2001, MAXINE APPEARED WITH 2 WPD POLICE OFFICERS AND A CAMERA. THE INSPECTION AGREEMENT STATED NOTHING ABOUT USING THE POLICE TO HARASS OR INTIMIDATE, TAKING PHOTOS OR THE PRESENCE OF MAXINE SCHMIDT ON MY PROPERTY, WHO HAD A NO TRESPASS ORDER IN EFFECT. SHE WAS HEARD BY ME TRYING

*Submitted to Court but never litigated — provided here for background info —*

TO INFLUENCE THE BUILDING INSPECTOR WITH PARANOIA ABOUT MY DOOR, DAMAGED BY WPD DURING A PRIOR ENTRY WITHOUT A WARRANT SO THAT MAXINE COULD PRANCE AROUND AND WRITE REPORTS ABOUT MATERIALS INSDIDE THAT WERE NOT HEALTH HAZARDS.
    POLICE APPROPRIATELY EVICTED HER AFTER SOME DISCUSSION, HOWEVER, IN PURSUIT OF A POWER HANDLE/ILLEGAL DOMINION OVER PROPERTY NOT OWNED BY HER, SHE WHINED HER PERONAL REACTIONS TO HER ATTORNEY, WHO TRANSLATED IT INTO A CONTEMPT ALLEGATION THAT WAS NOT VERIFIED. GIVEN SHMIDT'S QUESTIONABLE SENSE OF HONESTY, IT IS POSSIBLE THAT GIORGIO FILED THIS AND A MORE RECENT CONTEMPT MOTION ON A MISUNDER- UNDERSTANDING OF HER CLIENT'S MOTIVES/CHARACTER, SENSE OF REALITY, ETC. A WRITTEN REPSONSE TO THE COMPLAINT, ADDRESSING PLAINTIFF'S POOR CHOICE OF WORDS "LUNGING" TO REFER TO THE DEFENDANT'S DRAWING CLOSER TO HEAR SCHMIDT'S CONVERSATION WITH THE BUILDING INSPECTOR, HAD BEEN SUBMITTED TO THE

RECORD WITHIN DAYS FOLLOWING THE "COMPLAINT".
    SUBSEQUENT COURT APPEARANCES TO HEAR COMPLAINT/DEFENSE STATEMENTS WERE PRE-EMPTED BY PLAINTIFF'S ATTORNEY BEING ALLOWED TO SPEAK FIRST AND REQUEST INSPECTIONS--I.E., CON- TEMPT ALLEGATIONS WERE NOT DISCUSSED ACCORDING TO DUE PROCESS. IT SHOULD HAVE BECOME EVIDENT AT THAT POINT THAT THE PLAINTIFF WAS MISUSING THE LEGAL SYSTEM TO HER OWN TYRANNICAL ENDS. DEFENDANT DID TRY TO ENLIST THE AID OF THE DISTRICT COURT 8/14/01 REGARDING SCHMIDT'S DISRESPECT OF PROPERTY RIGHTS, INVASION OF PRIVACY, AND MISUSE OF THE WPD. THAT DOCKET # IS IN THE RECORD TO FACILITATE ACCESS TO IT, AS THERE WAS A QUESTION OF A FALSE DOCUMENT SUBMITTED BY SCHMIDT IN HER DEFENSE, WHICH THE DA SUGGESTED AS A REASON FOR INVESTIGATION.
    ON 9/19/01, I WAS CAUGHT UNAWARE THAT AN INSPECTION DATE HAD BEEN SET BY GIORGIO, SHE AGAIN IGNORING RUP'S ORDER ON THE

INJUNCTION OF DECEMBER 2000 TO INVOLVE THE OWNER IN DATE- SETTING. SUBSEQUENT MISREPRESENTATIONS OF MY ASSERTIONS OF BASIC RIGHTS, A CONFUSION OF "CONTEMPT OF MAXINE" DUE TO HER FORM OF DESPOTISM/OPPRESSIVENESS, WITH "CONTEMPT OF COURT" RESULTED IN AN EXTREME AND UNCONSTITUTIONAL ORDER BY JUDGE JOSEPHSON THAT SEEMED TO ALLOW A FREE-FOR-ALL ON MY PROPETY. THE MISUNDERSTANDING UNDERLYING THIS WAS THAT I WASN'T ALLOWING INSPECTIONS. NOTE THAT THE WORD "SUSEQUENT" 6 LINES UP, REFERS TO SUBSUEQUENT TO DECEMBER 2000.
    BEING CAUGHT UNAWARE, I HAD CALLED THE STATE POLICE BECAUSE MAXINE WAS BREAKING AND ENTERING AND FAULT-FINDING WITH MY DOOR VERBALLY TO WHOEVER WAS WITH HER--SHE STILL HAD A NO TRESPASS ORDER IN EFFECT, BUT THE DAY PRIOR OFC. SCOBLE OF WPD HAD TOLD ME IT WAS INVALID, WHICH INDICATED TO ME THAT SCHMIDT WAS MISINFORMING WPD TO GAIN HER OWN ENDS

NUISANCE SUING AGAINST "DEMOLITION MATERIAL" BECAUSE A BIG SENSATIONALISM THROUGH THE COURTS AND MEDIA, WOULD BECOME FOR SCHMIDT AN EXPEDIENT WAY TO SAVE HER JOB WHICH WAS IN JEOPARDY FROM A PRIOR CITIZEN'S COMPLAINT OF HER NEGLIGENCE; WAS NOT PART OF THE ORIGINAL ORDER BY JUDGE JOSEPHSON.  I WAS CARRYING 2 JOBS AROUND THAT TIME, AND BOTH CARRIED A LOT OF RESPONSIBILITY--ONE JOB HAD NEW STAFF AND MGT THAT DISALLOWED ME TIME OFF DURING THE TIME I WAS ONE OF FEW WELL-VERSED IN COMPANY OPERATIONS--THEREFORE I DID NOT HAVE TIME TO RESEARCH THE SOURCE OF THE ORDER, AND OF COURSE, I HAD RETAINED AN ATTORNEY, WHICH MEANT I HAD TO KEEP EARNING A BETTER INCOME.

    THE POLICE HAD MADE A FALSE ARREST, BROKE MY INNER DOOR RIGHT OFF THE HINGES, WHICH CREATED AN INCREDIBLE INCONVENIENCE FOR ME UNTIL I FIXED IT MORE PERMANENTLY, WHICH YOU WERE SHOWN 2/26/02, ALONG WITH MY STATEMENT OF BOH'S PRE-

VENTING MY PLACING OF THE BOLT SLOT UNTIL THEY STOPPED BOTHERING ME ABOUT RUBBERMAID CONTAINERS WHICH NEED TO BE OPENED TO LOCATE THE KEY.  ON 7/16/01 I GAVE JOSEPHSON AN UNDEVELOPED FILM THAT SHOWED HOW I HAD TO DISARRANGE/DISARRAY THE CONTAINERS IN ORDER TO GO THROUGH THEIR CONTENTS, HAVING TRIED TO EXPLAIN TO BOH MONTHS PRIOR HOW APPEARANCES CAN BE DECEIVING AND HOW THEY MAY NEED TO RETHINK ABOUT THE BIG PUSH TO MISREPRESENT THE SITUATION BY CIRCUMSTANTIAL EVIDENCE WRONGFULLY OBTAINED.  MALICIOUS ABUSE OF PROCESS HAS BEEN MENTIONED IN A PRIOR WRITTEN STATEMENT SUBMITTED 3/4/02, AS RELEVANT TO THIS CASE, EVEN THOUGH ITS ACTUAL PROSECUTION MAY NEED A SEPARATE DOCKET# IN A HIGHER COURT.

    I DID MY BEST TO GET A LAWYER-PLAINTIFF'S ATTY. HAS NOTHING TO SAY RE MY TIME SCHEDULE RE GETTING ONE, WHEN I HAVE TO SLEEP DAYS TO WORK NIGHTS AND CAN'T GET RETURN CALLS. MY NIGHTS OFF COULD HAVE BEEN USED FOR WORK AT HOME HAD IT

NOT BEEN PREVENTED BY A NIGHT CURFEW THAT NOT ONLY DISPLAYS MAXINE'S DIFFICULTY IF SHE DOESN'T HAVE HER WAY WITH AN UNREASONABLE POWER PLAY, BUT ALSO WAS OUTDATED FROM A MISCONCEPTION THE ORIGINAL BUILDING INSPECTOR ADMITTED WAS BASED ON MAXINE'S PARANOIA WHICH HE LATER COULD DISCERN. MAXINE HAD BECOME SO BLINDED BY SELF-GLORIFICATION ABOUT A CONDEMNATION SIEGE THAT SHE FAILED TO DISCERN THE PROPER PERSPECTIVES OF WHAT WERE HEALTH/SAFETY HAZARDS OR WHAT WAS APPROPRIATE BEHAVIOR.  SHE HAD A WAY OF MANIPULATING POLICE, ATTORNEYS, ETC. THAT WAS COMPLETELY OUT-OF-WHACK, AND BASED ON FAULTY CONCLUSIONS OF MY WIRING/SEPTIC FACILITIES. LIGHTS AND WATER ON, SHOULD PROVE HER DISTORTIONS OF REALITY.

    SUCH MISPECEPTIONS WERE WRONGFULLY TRANSLATED INTO CONTEMPT COMPLAINTS, WHICH WOUD GIVE MAXINE A POWER HANDLE TO GAIN FORCED/IMPROMPTU INSPECTIONS TO SET ME UP TO HER OWN ENDS.  SHE WAS IN CONTEMPT BY PHOTO-TAKING, ETC.    PJP

*Paula J. Pavelcsyk* (signature)