FILED
CLERK'S OFFICE
2004 OCT 22 P 4:51
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE
2004 OCT 22 P 4:50
U.S. DISTRICT COURT
DISTRICT OF MASS.

PAVELCSYK )

VS. )

) #03-30312-MAP

WILLIAMSBURG BOARD OF HEALTH )

N O T I C E O F A P P E A L

Now comes the plaintiff, requesting that the complaint be litigated, due to excessive material loss because the defendant could not recognize /respect an appeal of a wrongful decision to demolish a person's home. This should be part of legal due process--this particular aspect of the complaint was certainly not a relitigation of a prior case in a lower court, but rather a presentation of a new issue, since all county court hearings had occurred prior to the demolition date of 5/28/02. A claim to recover losses was also part of the original complaint, and obvioiusly not part of the county court hearings. This was also a new complaint

1. Some abberations regarding refusing entry had appeared in the defendant's arguments, and the dismissal decision wa was perhaps influenced by this and other shadings: After

consultation with the Selectmen, I had issued a no trespass on Maxine Schmidt ,in accordance with my rights. and after a call to the local attorney general's office, because she could not discern the differnece between a minor wall crack, and whether or not the roof was solid, and because she originally ignored a judge's injunction requiring the homeowner's input in inspection date-setting,

A request to appoint counsel had been submitted to this court because not all of my copies of records , documents, were retrieved from the demo, and an attorney coud could access the record with more facility than I could. Given the difficulty winning the county court proceedings against me, I didn't want to proceed with a lack of legal knowledge--defendant's argument that I never sought an attorney was incorrect--I could often get some advice, and note that one attorney was about to take the case, called up the county court's superior clerk's office,and was told the case was ove r, when it was not, at that time.

2. Defendant's argument that I had no right to counsel elicits the kind of lack of respect for a citizen's rights and possesions that are anti-thetical to democracy--they need to realize that this is America, not Nazi Germany.

3. The "Answer to Motion to Dismiss and Supportive Information" submitted by me on 8/23/04, referred to a an attachment that was not included in the 8/23/04

document, and that is included as "exhibit A" in this document--to follow is a copy of an appeal of a judge's decision to inspect the home at a date inconvenient to me--not only did this refute defendant's claim about refusals of entry but also proves the failure of BOH to recognize an appeal, as Maxine forced entry with WPD, and I was arrested for trying to explain that a date was still being determined.

Part of the county court record that an attorney could access was an eliciatation of 2 instances of perjury by the defendant--as previously noted. dishonesty was a valid issue,and dismissal is premature until the Pepyne investigation is done.

4. Originally malicious abuse of process seemed to be BOH's use of the county court to scare me with threats of demolition because a neighbor didn't like my yard storage, but later it seemed , from what Gibson stated, they were "trying to prove a point". Apparently this point was that they could abuse, intimidate , and traumatize someone. commit crimes, and get away with it. I was arrested for trying to show Gibson that building codes were met/, on demo day.

They just proceeded as if I weren't there. ignoring changes I had made re the property---cutting down trees which were never mentioned as an issue--I never had a chance

to show them a new mini-shed I had erected in compliance, and I beleive a WPD Officer had ridden by one day while I was emptying a shed to make room for what was outdoors.. As far as I was concerned , it as to be an inspection on 5/28/02; pursuant to a meeti ng with Selectmen and and a letter to Gibson.

5. Harrassment of a physically disabled person is a violation of Mass. General Laws;although the dismissal may have overlooked this; it being cribbed in on my original complaint--being aware that an attorney's presentation is more stringent than a pro se litigant's, I had also cribbed in a "request for reconsideration for the court to appoint an attorney, in the "Answer" filed 8/23/04,although perhaps a more formal request is required--also. the clerk's office had mailed me a request form re going before a magistrate, which I would be willing to complete with signatures from BOH as well. Unfortunately my intense work schedule, interrupted only by illness and surgery,prevented my getting to a BOH meeting with this form.

6. The dismissal report of 9/22/04 notes an option of a state court claim--being pro se,I thought that wrongdoings by town officials were material for this court,but it was hard to get attorneys while I work night s and sleep days.

Thank you for the time and attention to this matter.

Respectfully,

Paula J. Pavelczyk






AMENDMENT IV [1791]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

AMENDMENT V [1791]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

AMENDMENT VI [1791]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

AMENDMENT VII [1791]

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

AMENDMENT VIII [1791]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

AMENDMENT IX [1791]

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

AMENDMENT X [1791]

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

EXHIBIT B

254 The case in which the Supreme Court upheld the right to compulsory process over President Nixon's claim of executive privilege is *U.S. v. Nixon*. 418 U.S. 683 (1974).

254 A court has inherent power to sanction anyone connected with a case for civil or criminal contempt. Civil contempt is designed to secure compliance with a subpoena or other request of one of the parties to a civil suit. A person subject to civil contempt may be fined or imprisoned, but may immediately vacate the punishment by complying. See Kamisar, LaFave, and Israel, *Modern Criminal Procedure*. 7th ed., p. 637, n. a. For more on civil contempt, see discussion and notes on the Fifth Amendment *(Bouknight)*.

If civil contempt fails or appears futile, the court may then utilize criminal contempt, which is like a criminal trial and is separate from the underlying proceeding. Criminal contempts are acts that obstruct the administration of justice or tend to bring the court into disrespect. Criminal contempt is an independent proceeding, which is immediately appealable regardless of the status of the underlying trial, but civil contempt is not. *Doyle v. London Guarantee & Accident Co.*, 204 U.S. 599 (1907).

255 The statements by Myron Farber and Judge Trautwein at the contempt hearings are from Transcript of Proceedings, *In the Matter of Myron Farber and the New York Times Co., Charged with Contempt of Court*, Superior Court of New Jersey, Law Division, Bergen County, July 24, 1978.

257 The decision of the New Jersey Supreme Court upholding Dr. Jascalevich's right to compulsory process over Myron Farber's claim of privilege is *In re Myron Farber*, 78 N.J. 259 (1978).

**Right to Counsel: *United States v. Cronic***

263 The description of a check-kiting scheme is from an instruction given by the Honorable Thomas R. Brett in *United States v. McKinney*, CR-85-69 (N.D. Okla. 1985); *aff'd United States v. McKinney*, 822 F.2d 946 (10th Cir. 1987), as quoted in *United States v. Cronic*, CR-80-21-P, Brief of Appellant.

265 Judge Eubank's quotation regarding appointment of counsel is from *U.S. v. Cronic*, no. 80-1955, Tenth Circuit, Appellant's Brief, June 24, 1985, p. 5 (citing Trial Transcript, p. 23).

265–266 For a more detailed explanation of the good faith defense to mail fraud in the Tenth Circuit, see *United States v. Washita Construction Co.*, 789 F.2d 809 (10th Cir. 1986).

266 The Supreme Court quotations regarding the history of the right to counsel are from *Powell v. Alabama*, 287 U.S. 45, 60–65 (1932).

When the right to counsel in criminal prosecutions was proposed as a constitutional amendment in 1789, the enforcement of the provision generated virtually no debate. As a result, federal judges "were left free to shape the right as they thought best." William Merritt Beaney, *The Right to Counsel in American Courts* (Westport, Conn.: Greenwood Press, 1972), pp. 8–26.

The Supreme Court did not hand down an in-depth interpretation of the right to counsel until 1938, when in *Johnson v. Zerbst*, 304 U.S. 458, it found a constitutional right to counsel for all federal felony prosecutions. Until then, one legal scholar commented, "there was no feeling . . . that defendants who pleaded guilty, or those who failed to request counsel, had a constitutional right to be advised and offered counsel, or that a conviction without counsel was void" (p. 32).

267 The Supreme Court quotations regarding the importance of the right to counsel are from *United States v. Cronic*, 466 U.S. 648 (1984).

267 *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). In the decades prior to *Gideon*, the Supreme Court had recognized some aspects of the right to counsel under the Fourteenth Amendment due process clause (as opposed to the Sixth Amendment counsel clause). In 1932, the Court relied on the due process clause to rule that indigent defendants facing capital punishment had a constitutional right to counsel. In *Powell v. Alabama*, the famous "Scottsboro" case, the court reviewed the fate of seven poor, illiterate black youths accused of raping two girls on a train. After being seized from the train and whisked away by a sheriff's posse, the youths were quickly tried, convicted, and sentenced to death. No lawyer was specifically assigned to their defense until the morning of their trial.

While the specific ruling in *Powell* refers to capital cases and destitute defendants, Justice Sutherland's opinion offers a stirring argument for a general right to legal representation at trial: "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one. He requires the guiding hand of counsel at every step in proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence" (pp. 68–69).

268 The Supreme Court case holding the *Gideon* rule applicable to all criminal cases is *Argersinger v. Hamlin*, 407 U.S. 25 (1972).

268 The Chief Justice's comments are from Warren E. Burger, "The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?" *Fordham Law Review* 42 (1973): 227, 230.

268 The case in which the trial attorney admitted his client's guilt to the jury is *Wiley v. Sowders*, 647 F.2d 642 (6th Cir. 1981).